United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Security National Insurance Company, Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 22-22357-Civ-Scola<br>) |
| The City of Miami Beach and others, Defendants. | )<br>)<br>) |

### Order

This matter is before the Court on the parties' multiple cross-motions for judgment on the pleadings, to dismiss, and to set aside default. The Defendant City of Miami Beach (the "City") moves for judgment on the pleadings on Count I of the complaint filed by the Plaintiff, Security National Insurance Company ("SNIC"). (ECF No. 16.) SNIC filed a response to the motion (ECF No. 25), and the City filed a reply. (ECF No. 32.) SNIC also filed a motion to dismiss Count I, III, and VI of the City's counterclaim (ECF No. 27), to which the City responded (ECF No. 34), and SNIC replied. (ECF No. 37.) Cross-Defendant A&A Drainage, Inc. ("A&A") moves to set aside its default on the City's crossclaim (ECF No. 30) and to dismiss the City's crossclaim. (ECF No. 26.) The City timely responded to both motions. (ECF No. 33.) A&A did not reply in support of either motion, and the time for it to do so has passed. After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **denies** the City's motion for judgment on the pleadings (**ECF No. 16**), **grants** SNIC's motion to dismiss (**ECF No. 27**), **grants** A&A's motion to set aside default (**ECF No. 30**), and **denies** A&A's motion to dismiss (**ECF No. 26**.)

1. **Background**

This case centers around an insurance dispute between SNIC, the City, and A&A relating to an underlying personal injury lawsuit in Florida state court. (Compl., ECF No. 1, ¶¶ 1, 8-13, 26-28.) The insurance dispute arose when Defendant Monica O'Chaney[1] brought a negligence action in state court against A&A and the City relating to injuries she suffered after falling into a storm drain on a Miami Beach sidewalk. (Compl. ¶ 9.)

According to the allegations in the state-court complaint, A&A "was doing maintenance and repairs to the sidewalk and/or storm drain manhole cover located at the corner of 11th Street and Meridian Avenue, Miami Beach, Florida"

---

[1] Defendant O'Chaney has not yet been served, and the Court has granted SNIC an extension of time to serve her because she has been evading service of process in this action. (ECF No. 39.)

on November 2, 2018.² (*Id.* Ex. A ¶ 2.) A&A allegedly failed to properly secure the manhole cover or sufficiently warn passersby of the potential dangers associated with the work it was performing on the manhole cover. (*Id.* Ex. A ¶¶ 3, 5.) Ms. O'Chaney was injured "when she fell into the storm drain" after stepping on the storm drain manhole cover while "walking on the sidewalk," which "collapsed" when she stepped on it. (*Id.* Ex. A ¶ 5.)

In the state-court negligence action, Ms. O'Chaney pleaded a claim for negligence against A&A for its failure to prevent the accident, alleging multiple breaches of A&A's duty to maintain the safety of the sidewalk area on which it was working and to warn pedestrians of any potential dangers associated with its work. (*Id.* Ex. A ¶ 6.) Ms. O'Chaney similarly pleaded a claim for negligence against the City, alleging that the City "owned, controlled, and/or maintained" the sidewalk on which the manhole cover was located, and that the City also failed to maintain the safety of the sidewalk or sufficiently warn passersby of danger. (*Id.* Ex. A ¶ 11.) Notably, as the Court will address in greater detail later, Ms. O'Chaney never asserted a claim for vicarious liability against the City based on A&A's conduct as the City's contractor. (*See generally id.* Ex. A.) Instead, the negligence claim against the City is premised upon the City's ownership and control of the sidewalk and manhole cover. (*Id.* Ex. A ¶¶ 11, 13-14.)

Following the filing of the underlying lawsuit, the City sent a tender letter to A&A seeking coverage relating to the state-court negligence action as an additional insured under A&A's insurance policy with SNIC (the "Policy"). (Countercl. ¶ 18.) SNIC eventually denied coverage to the City. (*Id.* ¶¶ 25-26.) The parties continued to dispute the City's ability to claim additional insured status under the Policy, leading to SNIC's filing of this action. (Compl. ¶¶ 16-17.)

SNIC filed its complaint seeking four counts of declaratory relief. In the first count, it seeks a declaration that it has no duty to defend the City under the terms of the Policy in the underlying lawsuit. (*Id.* ¶¶ 33-41.) In the second, it seeks a declaration that it has no duty to indemnify the City with regards to the underlying lawsuit. (*Id.* ¶¶ 42-51.) In the third, it seeks a declaration that it has no duty to defend the City under the terms of an endorsement to the Policy. (*Id.* ¶¶ 52-61.) Finally, in the fourth count, it seeks a declaration that it has no duty to indemnify the City under the terms of the endorsement. (*Id.* ¶¶ 62-72.)

In response, the City filed counterclaims against SNIC and crossclaims against A&A. In its first count, the City seeks declaratory relief against both SNIC and A&A that SNIC and A&A have a duty to defend the City in the underlying

---

² Although the underlying complaint and SNIC's complaint do not expressly allege it, the City alleges (and no party disputes) that A&A was acting as the City's contractor to accomplish work on the storm drain manhole cover at the time of the incident. (*See, e.g.,* Def. City's Countercl., ECF No. 13, ¶ 13.)

lawsuit under the terms of the Policy. (Countercl. ¶¶ 37-40.) In its second count, the City alleges that A&A breached its contract with the City and owes the City contractual indemnification relating to the underlying lawsuit. (*Id.* ¶¶ 41-47.) In its third count, the City asserts a similar breach of contract indemnification claim against SNIC. (*Id.* ¶¶ 48-58.) In its fourth count, the City alleges that A&A owes it common law indemnification relating to the underlying lawsuit. (*Id.* ¶¶ 59-65.) In its fifth count, the City alleges that A&A breached its contract with the City by failing to maintain required insurance covering the City. (*Id.* ¶¶ 66-72.) Finally, in its sixth count, the City alleges that SNIC is estopped from asserting any additional defenses to disclaim coverage under the Policy due to SNIC's delay in asserting any such possible defenses. (*Id.* ¶¶ 73-83.)

After filing its counter and crossclaims, the City moved for judgment on the pleadings on Count I of SNIC's complaint, asserting that under the plain terms of the policy and as a matter of Florida law, SNIC has a duty to defend the City in the underlying lawsuit. (Def. City's Mot. for J. on Pleadings, ECF No. 16, at 1.) SNIC argues in response that Florida law holds that SNIC does not have a duty to defend the City under the Policy because the underlying lawsuit does not base its claim against the City on vicarious liability. (Pl. Resp., ECF No. 25, at 2.)

SNIC then moved to dismiss Counts I, III, and VI of the City's counterclaim, asserting (among other reasons) that the City's affirmative claims fail as a matter of law for the same reason its motion for judgment on the pleadings must fail: the underlying complaint does not make a vicarious liability claim against the City. (Pl. Mot. to Dismiss Countercl., ECF No. 27, at 2-3.) The City, unsurprisingly, argues its position on its motion for judgment on the pleadings in response. (Def. City's Resp. at 2.)

Defendant and Cross-Defendant A&A, meanwhile, moves to dismiss Counts I, II, IV, and V of the City's crossclaim. (Cross-Def. A&A's Mot. to Dismiss Cross-cl., ECF No. 26, at 2-3.) A&A also moves to set aside the clerk's default that has been entered against it (ECF No. 23) because A&A failed to timely respond to the crossclaim. (Cross-Def. A&A's Mot. to Set Aside Default, ECF No. 30.) A&A argues that the City's crossclaims are either procedurally deficient or fail to state a claim as a matter of law. (Cross-Def. A&A's Mot. to Dismiss at 2-3.) A&A also argues that good cause exists to set aside the clerk's default. (Cross-Def. A&A's Mot. to Set Aside Default at 3-6.) The City, responding jointly to both motions, argues that its crossclaims are procedurally proper and legally cognizable, and that A&A cannot establish good cause to set aside its default because A&A's default was willful, it fails to present meritorious defenses, and the City cannot simply pay any judgment on the underlying claim and then seek recovery from A&A after the fact. (Cross-Pl. City's Omnibus Resp. at 2-4.)

Central to the Court's resolution of the motions is the Policy's "Additional Insureds Endorsement," which the parties quote extensively in and attach to their pleadings:

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

>  **1.** Your acts or omissions; or

>  **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

>  **1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

>  >  **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

>> **b.** Supervisory, inspection, architectural or engineering activities.
>
> **2.** "Bodily injury" or "property damage" occurring after:
>
>> **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
>>
>> **b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Compl., Ex. B., form no. CG 20 33 07 04.)

### 2. Legal Standards

As set forth in Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010). A court ruling on a Rule 12(c) motion must "accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.* A motion for judgment on the pleadings is subject to the same analysis as a motion to dismiss pursuant to Rule 12(b)(6). *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

While the Court must accept well-pleaded facts as true, it need not assume the truth of conclusory allegations, nor are parties entitled to have the Court view unwarranted deductions of fact or argumentative inferences in their favor. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (holding mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" insufficient to survive motion to dismiss); *see also Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (per curiam). A court may also properly consider documents attached to the complaint, answer, or motion so long as they are (1) central to the plaintiff's claim, and (2) undisputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134–1135 (11th Cir. 2002); *cf. Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (including exhibits among factual allegations to be considered on 12(b)(6) motion to dismiss, stating "when the exhibits contradict the … allegations of the pleading, the exhibits govern"). Regardless of a plaintiff's allegations, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

"It is the general rule that default judgments are ordinarily disfavored because cases should be decided upon their merits whenever reasonably possible." *Creative Tile Marketing, Inc. v. SICIS Intern.*, 922 F. Supp. 1534, 1536 (S.D. Fla. 1996) (Moore, J.). A court may set aside a clerk's default for good cause shown. Fed. R. Civ. P. 55(c); *see also Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). "'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance." *Id.* To determine whether good cause exists, the Court considers (1) whether the default was culpable or willful; (2) whether setting it aside would prejudice the adversary; and (3) whether the defaulting party presents a meritorious defense. *Id.*

### 3. Analysis

#### A. SNIC and the City's Cross-Motions

The Court will address the City's motion for judgment on the pleadings and SNIC's motion to dismiss the City's counterclaim at the same time, as both motions present essentially the same core legal argument. SNIC and the City argue primarily about whether the language in the Policy's Additional Insured Endorsement requires SNIC to defend the City in the underlying lawsuit. (Def.

City's Mot. for J. on Pleadings; Pl.'s Mot. to Dismiss Countercl.) Because the parties' pleadings both reference the Policy's terms, and the interpretation of contract terms is a legal issue for the Court to resolve, the Court may properly determine the application of the Additional Insured Endorsement on the parties' motions. *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014) ("The interpretation of provisions in an insurance contract is a question of law."). To do so, the Court focuses on the "eight corners" of SNIC's complaint in this action and the underlying state-court complaint, which SNIC attaches as an exhibit to its complaint here. *Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1261 (11th Cir. 2021). The Court also observes, counter to SNIC's argument, that it may properly consider the City's motion for judgment on the pleadings because the pleadings are closed between the City and SNIC. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 (11th Cir. 2014) ("The rationale underlying Rule 12(c) further supports this notion: that competing pleadings pertinent to the [complaint] be available for the court to consider on a motion for judgment on the pleadings.").

### (1) Florida State Law Interprets the Contract Language at Issue to Require Allegations of Vicarious Liability to Trigger the Duty to Defend

The City's and SNIC's arguments both depend on the interpretation and application of the Policy's Additional Insured Endorsement. The City argues that the plain terms of the endorsement obligate SNIC to defend it in the underlying lawsuit. (Def. City's Mot. for J. on Pleadings at 6.) SNIC argues that the terms of the endorsement, as conclusively interpreted by the Florida Supreme Court, relieve SNIC of any duty to defend or indemnify the City in the underlying action. (Pl.'s Mot. to Dismiss Countercl. at 2-3.) The relevant portion of the Additional Insured Endorsement reads, with the parties' names identified based on the assumption that the City qualifies as an "additional insured" under the Policy, as follows:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured [the City] for whom [A&A is] performing operations when [A&A] and [the City] have agreed in writing in a contract or agreement that [the City] be added as an additional insured on [A&A's] policy. [The City] is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>> **1.** [A&A's] acts or omissions; or
>>
>> **2.** The acts or omissions of those acting on [A&A's] behalf;

in the performance of [A&A's] ongoing operations for the [City].

(Compl., Ex. B, form no. CG 20 33 07 04) (emphasis added).

SNIC argues in both its response and its motion to dismiss that the language above—particularly the "caused, in whole or in part, by" language—has been definitively interpreted by the Florida Supreme Court in *Garcia v. Federal Insurance Company* to require allegations of vicarious liability against the City before SNIC has a duty to defend (or indemnify) the City.[3] (Pl.'s Mot. to Dismiss Countercl. at 16 (citing 969 So. 2d 288, 294 (Fla. 2007)).) The City counters that *Garcia's* holding is either distinguishable or the underlying complaint asserts claims for non-direct liability against the City. (Def. City's Mot. for J. on Pleadings at 9-12; Resp. to Pl.'s Mot. to Dismiss at 10.)

In *Garcia*, the Florida Supreme Court answered two certified questions from the Eleventh Circuit, the second of which is relevant here: "Does an insurance policy providing coverage for an additional insured 'with respect to liability because of acts or omissions' of the named insured limit coverage to instances in which the additional insured is vicariously liable for acts of the named insured?" 969 So. 2d at 289. The Florida Supreme Court answered that question in the affirmative. *Id.*

The policy language at issue in *Garcia* was substantially similar to the language at issue here. *Id.* at 290. There, the policy provided that the insurer would provide coverage for "covered persons" where "covered persons" included "any other person or organization with respect to liability <u>because of acts or omissions of you or a family member</u>." *Id.* (emphasis added). In reviewing that language, the Florida Supreme Court held "that the phrase 'any other person with respect to liability because of acts or omissions of the named insured' is unambiguous and <u>limits an additional insured's coverage to instances of vicarious liability</u>." *Id.* at 291 (emphasis added).

As SNIC points out, the Southern District of Florida has also previously confirmed that *Garcia's* holding governs nearly identical insurance policy terms. *Amerisure Ins. Co. v. Seneca Specialty Ins. Co.*, No. 20-20442-Civ, 2020 WL 3317035, at *4-5 (S.D. Fla. June 18, 2020) (Moreno, J.). In *Amerisure*, this court reviewed policy language that provided coverage for additional insureds "with respect to liability . . . caused, in whole or in part by" the primary insured's "acts or omissions." *Id.* at *4. Under *Garcia*, this Court reasoned, such a policy term is unambiguous and requires allegations of vicarious liability to be triggered. *Id.* at *5. The same is true here: the Additional Insured Endorsement is not vague or ambiguous, its language is essentially the same as language that has been definitively interpreted by the Florida Supreme Court, and therefore it requires allegations of vicarious liability before an insurer becomes responsible to defend (or indemnify) an additional insured. *Garcia*, 969 So. 2d at 291; *Amerisure*, 2020 WL 3317035, at *5.

The City also argues that *Garcia* and *Amerisure* are distinguishable in their factual postures and that *Garcia's* holding is limited to the duty to indemnify, so

---

[3] The Court assumes, without finding, that the City qualifies as an additional insured under the Policy for the purposes of its analysis in this order.

does not apply to the duty to defend. (Def. City's Mot. for J. on Pleadings at 9-12.) But the breadth of the Florida Supreme Court's language in *Garcia* defeats both of the City's arguments. 969 So. 2d at 291. The Florida Supreme Court's holding that the policy language "limits an additional insured's coverage to instances of vicarious liability" is in no way restricted to only circumstances where a party seeks indemnification instead of defense. Nor is it limited to the factual circumstances of that case. Rather, the Florida Supreme Court was clear in its decision. Where an insurance contract provides coverage to an additional insured "because of the acts or omissions of the named insured," such a provision will only provide coverage in "instances of vicarious liability." *Id.* Here, the Policy's Additional Insured Endorsement is applicable only "with respect to liability . . . caused, in whole or in part by . . . [A&A's] acts or omissions." (Compl., Ex. B, form no. CG 20 33 07 04.) Therefore, under Florida law,[4] the City must demonstrate that the underlying complaint alleges some form of vicarious liability to trigger a duty to defend (or indemnify) by SNIC.

### (2) The Underlying Complaint Makes No Allegations of Vicarious Liability Against the City

The City argues that the underlying complaint sets out allegations of vicarious liability, or the functional equivalent, by alleging that the City is liable for Ms. O'Chaney's damages based on a theory of breach of its nondelegable duty as a premises owner. (Def. City's Mot. for J. on Pleadings at 6-10.) The City relies heavily on *Armiger v. Associated Outdoor Clubs, Inc.* (*Id.* at 8-9 (citing 48 So. 3d 864, 874-76 (Fla. 2d DCA 2010)).) SNIC asserts that allegations of a premises owner's nondelegable duty are allegations of direct negligence and cannot be considered vicarious. (Resp. to Def. City's Mot. for J. on Pleadings at 8.)

The Court agrees with SNIC's position. A premises owner's breach of its nondelegable duty to maintain the safety of the premises implicates the premises owner's direct, not vicarious, negligence. *Armiger*, 48 So. 3d at 874-75. *Armiger* addresses this at length, holding there that the trial court erred by considering allegations of a party's breach of its nondelegable duty to be anything other than direct negligence. *Id.* at 874 ("Once again, Associated's oft-repeated notion that a cause of action for the breach of a nondelegable duty is a separate and distinct cause of action from an action based on 'active' or 'direct' negligence led the circuit court into error.").

*Armiger* clearly states that a breach of a nondelegable duty is "direct" negligence. *Id.* at 875. A premises owner's "liability for the breach of a nondelegable duty arises from *direct*—instead of imputed—liability." *Id.* A party is

---

[4] The Court's interpretation of this contractual language is bound by the decisions of the Florida Supreme Court in this diversity action. *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983) (A federal court applying state law is bound to adhere to the state court's decisions "whether or not the federal court agrees with the reasoning on which the state court's decision is based or the outcome which the decision dictates.").

only vicariously liable, on the other hand, when it "has not breached any duty to the plaintiff; its liability is based solely on the legal imputation of responsibility for another party's tortious acts." *Id. Armiger* concludes by observing that "the occasional imprecision in analysis and joint classification for the purpose of convenience in discussion does not alter the fundamental differences between direct liability for the breach of a nondelegable duty and vicarious liability for the tortious acts of another." *Id.* at 876.

The underling complaint alleges a single count of negligence against the City. (Compl., Ex. A ¶ 15.). That count alleges the City "owned, controlled, and/or maintained" the sidewalk on which the manhole cover was located, and that the City also failed to maintain the sidewalks' safety or sufficiently warn passersby of danger. (*Id.* Ex. A ¶ 11.) The sole count against the city does not allege that the City is liable based on the acts of another party. (*Id.* Ex. A ¶¶ 9-15.) Nowhere does the complaint allege a claim for vicarious liability against the City, which is required to bring such a claim under Florida law. *Amerisure*, 2020 WL 3317035, at *5 ("Florida law is clear: 'to pursue a vicarious liability claim, the claimant must specifically plead it as a separate cause of action.'") (citation omitted).

There is no plausible reading of the underlying complaint under which the Court could construe its allegations against the City as allegations of vicarious liability. *Garcia*. 969 So. 2d at 291; *Armiger*, 48 So. 3d at 874-75; *Amerisure*, 2020 WL 3317035, at *4-5. The Court therefore finds that the underlying complaint brings only a direct claim for breach of the City's nondelegable duty. As such, SNIC does not owe the City any duty to defend it under the Policy. *See, e.g., Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813–14 (Fla. 1st DCA 1985) ("if the complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit.").

As the Court observed at the outset, its interpretation of the Policy's Additional Insured Endorsement is central to both the City's motion for judgment on the pleadings and SNIC's motion to dismiss the City's counterclaim for failure to state a claim upon which relief may be granted. (Def. City's Mot. for J. on Pleadings at 3; Pl.'s Mot. to Dismiss at 6-7.). Based on the "eight corners" of the complaint and the underlying complaint, SNIC cannot have breached the Policy or any duty (either to defend or to indemnify) that it owed to the City, because the underlying complaint brings only direct allegations of the City's breach of its nondelegable duty. (Compl., Ex. A ¶¶ 9-15); *Travelers*, 10 F.4th at 1261. The Court therefore denies the City's motion for judgment on the pleadings (ECF No.

16) and grants SNIC's motion to dismiss Counts I, III, and VI of the City's counterclaim against SNIC.[5]

### B. A&A Drainage's Motions to Set Aside Default and to Dismiss the City's Crossclaim

### (1) Good Cause Exists to Set Aside A&A's Default

A&A argues that good cause exists to set aside its default because it did not willfully ignore the deadline to respond to the City's crossclaim, a one-day delay in response does not prejudice the City, and it presents meritorious defenses to the City's crossclaim. (Cross-Def. A&A's Mot. to Set Aside Default at 3-4.) The City concedes in response that A&A's default did not prejudice the City, but argues that A&A's default was willful and that A&A fails to sufficiently detail its defenses. (Cross-Pl. City's Omnibus Resp. at 2-3.)

The Court does not find A&A's default to be willful. *See, e.g., Rensel v. Centra Tech, Inc.*, No. 17-24500-Civ, 2019 WL 7376756, at *1 (S.D. Fla. Sept. 12, 2019) (Scola, J.) (denying motion to set aside default where defendant's failure to timely respond was willful because "the Court has given [the defendant] ample opportunity to comply with the court's orders" but the defendant failed to do so over a period of months). A&A's response to the service of the City's crossclaim—setting aside served court documents and assuming them to be duplicates without reading them—is doubtlessly negligent. (Cross-Def. A&A's Mot. to Set Aside Default at 3.) But it does not rise to the level of willfulness required to sustain A&A's default.

The Court also finds that A&A has sufficiently stated "a hint of a suggestion" that it has meritorious defenses. *See, e.g., Griffin IT Media, Inc. v. Intelligentz Corp.*, No. 07-80535-Civ, 2008 WL 162754, at *3 (S.D. Fla. Jan. 16, 2008) (Marra, J.) (observing that, "with respect to a meritorious defense, 'likelihood of success is not the measure' . . . the movant need only provide 'a hint of a suggestion' that [its] case has merit.") (cleaned up). The City relies on *Griffin* for the proposition that A&A must demonstrate by "a 'clear and specific statement showing, not by conclusion, but by definite recitation of facts' that it has a colorable defense." *Id.* But this misreads *Griffin*. The court there observed that the moving party had provided far more than the standard to meet the meritorious defense factor because it had established its defenses "by a definite recitation of

---

[5] Although the Court does not address SNIC's arguments against the sixth count of the City's counterclaim in detail, the City cannot obtain relief under that count as a matter of law because the Court has already held that SNIC has no duty to defend or indemnify the City under the Policy. The Court also declines to address SNIC's other arguments against the City's motion for judgment on the pleadings and in support of its own motion to dismiss.

the facts." *Id.* In other words, a "definite recitation of the facts" is not the standard—that exceeds the standard. *Id.*

Here, A&A suggests that it has meritorious defenses. (Cross-Def. A&A's Mot. to Set Aside Default at 4 (asserting as defenses the City's "breach of the contract, that [A&A] performed all of its duties under the contract, and that [the City] cannot recover twice on the same damages.") While A&A provides little more than a "hint of a suggestion" that it has meritorious defenses, and those defenses may not ultimately succeed on the merits, A&A's assertions are sufficient to set aside its default under the liberal standard applied. *See, e.g., Griffin*, 2008 WL 162754, at *3. The Court therefore grants A&A's motion to set aside default.

### (2) The City Sufficiently Pleads Its Crossclaims Against A&A

Finally, A&A moves to dismiss Counts I, II, IV, and V of the City's crossclaim. (Cross-Def. A&A's Mot. to Dismiss Cross-cl. at 2-3.) A&A argues that the City "improperly seeks affirmative relied for damages in a declaratory action," improperly pleads its counts for declaratory judgment, and that the crossclaim should be dismissed under the doctrine of forum non conveniens because the City could have and should have brought its claims against A&A in Florida state court. (*Id.* at 5-15.) The City responds that its claims are appropriate and properly pleaded and that forum non conveniens does not apply to alternate domestic venues. (Cross-Pl. City's Omnibus Resp. at 5-11.)

First, the City may properly plead a count for a crossclaim for monetary relief under breach of contract where the complaint pleads only counts for declaratory relief. Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a coparty <u>if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim</u>, or if the claim relates to any property that is the subject matter of the original action.") (emphasis added); *see also Allstate Co. v. James*, 779 F.2d 1536, 1539 (11th Cir. 1986) (holding crossclaim for monetary damages to be properly within court's ancillary jurisdiction where the original complaint brought a claim for declaratory relief in federal court based on diversity jurisdiction).

Second, the City's count for declaratory relief against A&A (Count I) is properly pleaded. Alternative pleading is allowed under the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act. Fed. R. Civ. P. 8(d)(2); 28 U.S.C. § 2201(a). Further, courts routinely hold that claims for declaratory relief may be pleaded alongside breach of contract claims. *See, e.g., Gerdau Ameristeel US Inc. v. Zurich Am. Ins. Co.*, No. 20-82217-Civ, 2021 WL 7682525, at *1 (S.D. Fla. May 25, 2021) (Middlebrooks, J.) ("the mere fact that a claim is redundant and/or unnecessary does not in and of itself constitute grounds for dismissal under Rule 12(b)(6) for failure to state a claim."). Additionally, as the City points

out, its claim for declaratory relief against A&A seeks "forward-looking" relief, while its claim for breach of contract seeks "backward-looking" relief. *550 Seabreeze Dev., LLC v. Ill. Union Ins. Co.*, No. 19-24611-Civ, 2020 WL 473610, at *2 (S.D. Fla. Jan. 29, 2020) (Scola, J.) ("Declaratory judgment claims may properly coexist with breach of contract claims when they provide the plaintiff a form of relief unavailable under the breach of contract claim.").

Finally, the doctrine of forum non conveniens does not apply where the alternate forum is a domestic state court within the same judicial district as the federal court in question. *Doran v. City of Clearwater, Fla.*, 814 F. Supp. 1077, 1078 (M.D. Fla. 1993) ("The application of the doctrine of forum non conveniens to dismiss this case or to remand to State court would be improper."). It is telling that A&A cites no case law for the proposition that application of forum non conveniens would be appropriate in these circumstances and instead relies largely on Florida state court opinions focusing on forum-shopping. (Cross-Def. A&A's Mot. to Dismiss Cross-cl. at 6-13.) The City did not select federal court to hear this dispute; SNIC did. And, as the City observes, the state court has not yet decided whether to allow the City to brings its crossclaims against A&A in the state court action. (Cross-Pl. City's Omnibus Resp. at 9.) The parties may address any potential for double recovery or disparate outcomes between this matter and the state-court action should such an issue arise.

The City properly pleads its claims for declaratory relief and breach of contract against A&A, and the doctrine of forum non conveniens is inapplicable where the proposed alternate forum is a domestic state court within the same judicial district as the federal court. Therefore, the Court denies A&A's motion to dismiss Counts I, II, IV, and V of the City's crossclaim.

### 4. Conclusion

For the reasons stated above, the Court [the Court **denies** the City's motion for judgment on the pleadings (**ECF No. 16**). The Court **grants** SNIC's motion to dismiss (**ECF No. 27**) and dismisses counts one, three, and six of the City's counterclaim complaint against Defendant SNIC **with prejudice**. The Court **grants** Cross-Defendant A&A's motion to set aside default. (**ECF No. 30**.) Finally, the Court **denies** Cross-Defendant A&A's motion to dismiss the City's counterclaim. (**ECF No. 26**.) Cross-Defendant A&A shall file its answer to the City's counterclaim no later than **November 11, 2022**. Further, the parties shall simultaneously, within **twenty (20) days** from the date of this order, submit supplemental briefing addressing whether the Court should grant judgment on the pleadings in favor of SNIC on the claims for declaratory judgment in its complaint, based on the Court's findings in this order. Each party's filings shall comply with the Southern District of Florida Local Rules governing the length and other typographical requirements for motions.

**Done and ordered** in Miami, Florida, on October 28, 2022.

_____
Robert N. Scola, Jr.
United States District Judge